IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEDRO ADAME, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:21-cv-1464-L |
| ECHO GLOBAL LOGISTICS, LLC AND TOSCA LIMITED A/K/A TOSCA CONTAINERS, LIMITED, | § § § § § § | |
| Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Defendant Echo Global Logistics, Inc. ("Echo") has filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), *see* Dkt. No. 3, and Plaintiff Pedro Adame has filed a Motion to Remand, *see* Dkt. No. 5.

United States District Judge Sam A. Lindsay has referred both motions to the undersigned United States magistrate judge for hearing, if necessary, and proposed findings and recommendations. *See* Dkt. No. 7.

**Background**

According to the Original Petition, Adame is an owner/operator of his own truck and trailer. Adame alleges that Echo Logistics, LLC requested non-party SMG Royal Transportation, LLC transport a shipment of barrels and told SMG that the barrels were empty. SMG dispatched Adame to pick up the load of barrels from

Tosca Containers, LLC in Garland, Texas. Tosca was responsible for loading and securing the barrels. The barrels were not empty, as had been represented, but instead contained a hazardous material. The barrels spilled in transit because Tosca loaded them improperly and damaged Adame's property. *See* Dkt. No. 1-5.

Adame sued Echo and Tosca in Texas state court for breach of contract and common law fraud. *See id.* He sought monetary damages in the amount of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorneys' fees and costs. *See id.* at 2.

Echo, which was improperly named in the Original Petition, removed the case to this Court. *See* Dkt. No. 1. Echo then filed the pending motion to dismiss for lack of personal jurisdiction, *see* Dkt. No. 3, and an answer subject to the motion to dismiss, *see* Dkt. No. 4.

In its Amended Notice of Removal, Echo contends that the Court has both federal question jurisdiction and diversity jurisdiction. As to diversity jurisdiction, Echo asserts that Adame is a citizen of Texas and Echo is a Delaware corporation with its principal place of business in Chicago, Illinois. Citation has not been issued for Tosca, and Tosca has not been served.

Echo filed a motion to dismiss, asserting that the Court has neither general nor specific jurisdiction over it, Adame's claims are barred by the Federal Aviation Administration Authorization Act ("FAAAA"), and Adame has failed to state a claim. *See* Dkt. No. 3. Adame did not file a response, and the time to do so has passed.

Adame filed a motion to remand, asserting that this Court does not have

diversity jurisdiction because the amount in controversy does not exceed $75,000. *See* Dkt. No. 5. In the motion, Adame asserts that the amount in controversy does not exceed $75,000 exclusive of interests and costs because, in his state court petition, he seeks unspecified damages as required in Texas state court proceedings. He also avers that the amount in controversy does not exceed $75,000. Adame attaches a First Amended Petition filed in the state court proceeding as an exhibit to the motion to remand. In the amended petition, he stipulates that damages be limited to $75,000, exclusive of interest and costs. *See id.* at 3.

Echo filed a response to the motion to remand. *See* Dkt. No. 6. Echo asserts that Adame cannot amend the amount in controversy after removal and the amended petition filed in state court is a nullity. Echo also asserts that the Court has federal question jurisdiction because Plaintiff's claims against Echo are preempted by the FAAAA.

The undersigned now concludes that the motion to remand should be granted and the case, including Echo's motion to dismiss, should be remanded to state court.

**Legal Standards**

A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Statutes that authorize removal are meant to be strictly construed, and any

doubt as to the propriety of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n. 2 (5th Cir. 1983)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

For a federal court to have jurisdiction over a state action based on diversity, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. §§ 1332(a), (b).

For a case to be removed based on diversity jurisdiction, "'all persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'" *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). Individuals are citizens of the states where they are domiciled, as "for purposes of federal diversity jurisdiction, 'citizenship' and 'domicile' are synonymous." *Hendry v. Masonite Corp.*, 455 F.2d 955, 955 (5th Cir. 1972). For diversity jurisdiction purposes, "a corporation shall be deemed to be a citizen of

-4-

every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company is determined by the citizenship of all its members. *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.,* 757 F.3d 481, 483 (5th Cir. 2014); *Harvey,* 542 F.3d at 1080.

The amount in controversy is the "value of the object of the litigation." *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir. 1983). "Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408-09 (5th Cir. 1995) (internal quotation marks omitted).

If no amount of damages has been alleged in the state-court petition, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir. 1993). This requirement can be satisfied if the defendant shows that "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002).

The court looks "only to the face of the complaint" and asks "whether the amount in controversy exceeds the jurisdictional limit." *Ervin v. Sprint Commc'ns Co. LP,* 364 F. App'x 114, 117 (5th Cir. 2010) (internal quotation marks

omitted); *see also Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1336 (5th Cir. 1995). Jurisdictional facts are determined "as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253-54 (5th Cir. 1998). Only if the amount in controversy is not readily apparent from the state-court petition may the Court consider other evidence to determine the amount in controversy at the time of removal. *See S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 492 (5th Cir. 1996). For instance, post-removal declarations are generally not a part of determining an amount in controversy. *See Ford v. United Parcel Serv., Inc. (Ohio),* No 3:14-cv-1872-D, 2014 WL 4105965, at *4 (N.D. Tex. Aug 21, 2014). They can only be considered if the jurisdictional amount was ambiguous on the face of the state petition or at the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880,883 (5th Cir.2000); *St. Paul Reinsurance Co.,* 134 F.3d at 1254 n. 18. If the state-court petition on its face satisfies the amount-in-controversy requirement, a plaintiff's later attempt to "clarify the amount in controversy cannot divest jurisdiction." *Robinson v. Wal Mart Stores Texas, LLC.,* 561 F. App'x 417, 418 (5th Cir. 2014).

District courts must remand a case if, at any time before final judgment it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (internal

quotations omitted). The removing defendant "bears the burden of demonstrating that a federal question exists." *Id.*

## Analysis

The motion to remand should be granted because the Court has neither diversity nor federal question jurisdiction.

I.  **The Court does not have diversity jurisdiction because Echo fails to establish that the amount in controversy requirement has been met.**

The parties' diversity of citizenship is not disputed, so the issue is whether the required showing has been made that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

Typically, the sum a plaintiff demands in his initial pleading – including attorney's fees, interest, and statutory and punitive damages – is deemed the amount in controversy. *See* 28 U.S.C. § 1446(c)(2); *Greenberg*, 134 F.3d at 1253. But, in Texas state court, plaintiffs are not permitted to plead a specific amount of damages. *See* TEX. R. CIV. P. 47(c). Instead, they must plead into one of five predefined damages ranges. *See id.* The lowest damages range is the one that Adame pleaded into here: "monetary relief of $250,000 or less." Dkt. No. 1-5 at 1.

Unfortunately, this range does not map precisely onto the $75,000 federal diversity threshold. "A state-court plaintiff must plead into the '[$250,000] or less' bracket regardless of whether the true figure she seeks is $9,000 or $99,000." *Solores v. Allstate Vehicle and Prop. Inc. Co.*, No. 5:19-CV-00027, 2019 WL 3253072, at *1 (S.D. Tex. July 11, 2019). But a plaintiff may avoid removal by filing a binding

-7-

stipulation with his complaint limiting his recovery to $75,000. *See De Aguilar*, 47 F.3d at 1412; *Richard v. Time Warner Cable Media, Inc.*, 960 F. Supp. 2d 659, 662 (N.D. Tex. 2013). Where, as here, the plaintiff does not file a binding stipulation, the removing defendant must prove by a preponderance of the evidence that the plaintiff's damages demand in fact exceeds $75,000. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003).

There are two ways to meet this burden. First, the defendant may show that it is "facially apparent" from the complaint that the plaintiff's claims likely exceed $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Alternatively, the defendant "may support federal jurisdiction by setting forth the facts in controversy – preferably in the removal petition, but sometimes by affidavit – that support a finding of the requisite amount." *Id.*; *see Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

"While the statute requires that the removing defendant give notice to the court and all parties, and there is some disagreement in the case law as a whole, Fifth Circuit case law consistently suggests that the state court is divested of jurisdiction when the state court receives either actual or constructive notice of the removal," and "[t]he Fifth Circuit case law has been quite consistent in holding that the state court ceases to have jurisdiction when the state court is given notice." *McAdams v. Medtronic, Inc.*, Civ. A. No. H-10-2336, 2010 WL 2710393, at *2, *3 (S.D. Tex. July 7, 2010) (citing cases). Here, "[t]he moment [that Defendants] filed the Notice of Removal in the state court, the state court lost its jurisdiction and

removal was effected," and "[t]he fact that [Defendants] filed a subsequent [Supplemental] Notice of Removal in this Court to correct a deficiency present in its original notice has no bearing on this determination." *Robinson v. Wheeler*, No. 4:15-CV-00104-DMB-JMV, 2016 WL 593624, at *5 (N.D. Miss. Feb. 12, 2016). Accordingly, Adame's post-removal filing in the state court is void because the case was no longer pending there. *See McAdams*, 2010 WL 2710393, at *4.

But, even if that were not so, in the context of removal, "[t]he jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000). This follows from the "long-established general rule, holding that jurisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction." *La. v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014). Under this general rule, "most post-removal developments – amendment of pleadings to below jurisdictional amount or change in citizenship of a party – will not divest the court of jurisdiction." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987); *accord GlobeRanger Corp. v. Software Ag United States of Am., Inc.*, 863 F.3d 477, 488 (5th Cir. 2016) ("Before delving into *GlobeRanger I*, we begin with some basic principles of federal jurisdiction that inform our reading of it. First is the 'fundamental principle' that jurisdiction is determined based on the time of removal. This removal rule is a corollary of the 'time-of-filing rule' that governs jurisdictional determinations for cases originally filed in federal court. A rule of 'hornbook law,' the time-of-filing rule traces at least as far back as an 1824 Supreme Court case holding

that jurisdiction depends upon the state of things at the time of the action brought. Both the time-of-filing and time-of-removal rule make sense. It would be inefficient for the court, as well as for litigants, if the power of the court to decide a case could exist at the outset, but later disappear based on changed circumstances." (internal quotation marks and citations omitted)); *Anderson v. Dow Chem. Co.*, 255 F. App'x 1, 3 (5th Cir. 2007) ("[I]t is well established that, with few exceptions, diversity jurisdiction is determined as at the time an action is filed; an amendment to the complaint or stipulation reducing the amount in controversy does *not* divest a federal court of such jurisdiction." (emphasis in original)).

As such, "though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) (footnote omitted).

As previously noted, a plaintiff's pleading for a specific sum made in good faith must be deemed the amount in controversy – but this request does not control when made in bad faith or when state practice does not permit demand for a specific sum. 28 U.S.C. § 1446(c)(2); *De Aguilar*, 47 F.3d at 1410 (holding that the face of a plaintiff's pleading alleging damages below the federal jurisdiction amount will not control to prevent removal if the pleading was made in bad faith); *see also* TEX. R. CIV. P. 47(b)-(c). In Texas, the law does not permit a plaintiff to plead for a specific amount. Rather, Rule 47 requires a pleading to contain a statement that the damages sought are within the jurisdictional limits of the court and a statement that

the party seeks a pre-defined range of damages. *See* TEX. R. CIV. P. § 47((b)-(c). As a result, Texas law does not permit a plaintiff to plead that he or she seeks damages not to exceed $75,000, and such a specific demand cannot be deemed the amount in controversy because "[s]uch manipulation is surely characterized as bad faith." *Garcia v. Kellogg USA, Inc.*, No. 7:13–CV–00347, 2013 WL 4735169, at *1 (S.D. Tex. Sept. 3, 2013) (citing *De Aguilar*, 47 F.3d at 1410); *see also Ford v. United Parcel Serv., Inc. (Ohio)*, No. 3:14-cv-1872-D, 2014 WL 4105965, at *2 (N.D. Tex. Aug. 21, 2014) (holding that pleading award not to exceed $74,000 "purposefully contravened the Texas rules governing pleading requirements so as to avoid federal jurisdiction.").

In its Notice of Removal, Echo relies solely on the amount of damages stated on the face of Adame's Original Petition, which quotes Rule 47(c)(1), to support removal on the basis of diversity jurisdiction. Echo does not come forward with evidence to show that the amount in controversy likely exceeds the jurisdictional requisite. Echo has not met its burden to show that the amount in controversy prerequisite has been met.

II. The Court does not have federal question jurisdiction because neither of Adame's state law claims is completely preempted by the FAAAA.

Echo contends that this Court has federal question jurisdiction because Adame's breach of contract and common law fraud claims against it are completely preempted by the FAAAA.

Federal question jurisdiction is governed by the "well-pleaded complaint rule,"

which provides that "a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon [federal] law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (internal quotation omitted). In cases where the plaintiff has pled only state law causes of action, there is generally no federal question jurisdiction. The complete preemption doctrine is an exception to the well-pleaded complaint rule. Under this jurisdictional doctrine, a federal court may assert jurisdiction over a complaint that purports to rest on state law where the law governing the complaint is exclusively federal. *See id.* at 61. In other words, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) (internal quotations omitted).

The central inquiry in a complete preemption analysis is "whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under the state law." *Id.*

Complete preemption is distinct from ordinary preemption, which constitutes a defense but does not provide federal jurisdiction. *See Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Complete preemption, which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption') which does not."). In general, complete preemption is "less common and more extraordinary" than ordinary preemption, and the United States Supreme

Court has found complete preemption only three times. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1097 (10th Cir. 2015) (noting that the Supreme Court has "so far encountered only three...statutes" [the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act] that are "true complete preemption statute[s]").

Congress enacted the FAAAA as a deregulatory measure "that seeks to encourage market forces" within the ground-transportation industry. *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686, 695 (5th Cir. 1999). In writing the FAAAA, Congress borrowed language from the Airline Deregulation Act and included a preemption provision, which reads, in relevant part, "a State ... may not enact or enforce a law, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008); 49 U.S.C. § 14501(c)(1).

Echo argues that this Court has federal question jurisdiction because Adame's breach of contract and common-law fraud claims fall within the category of claims preempted by 49 U.S.C. § 14501(c)(1) and characterizes those claims as arising from and relating to Echo's services as a licensed freight broker arranging for the transportation by motor carrier of goods through interstate commerce. *See* Dkt. No. 1 at 5; Dkt. No. 3 at 8; *see also* 49 U.S.C. § 13102(2) (defining "broker"); Dkt. No. 11-1

(undisputed evidence showing Echo's status as a freight broker).

Courts in the Fifth Circuit have found that the FAAAA does not preempt contract-based claims. *See Interstate Service Provider, Inc. v. Jordan,* No. 4:21-cv-267, 2021 WL 2355384, at 9 (E.D. Tex. June 9, 2021) (citing cases). "Congress used the same language as found in the ADA when writing the FAAAA and intended to incorporate [*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)]'s 'broad preemption interpretation.'" *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 18 (1st Cir. 2014) (quoting *Rowe*, 552 U.S. at 370); *see Cartegena v. Cont'l Airlines, Inc.*, 10 F. Supp. 2d 677, 680 (S.D. Tex. 1997) ("Th[e FAAAA preemption] provision is the same as in the ADA." (citation omitted)).

As such, in almost all circumstances, courts rely on ADA-preemption caselaw to inform preemption analysis for the FAAAA. *See Popal v. Reliable Cargo Delivery, Inc.*, No. PE:20-CV-00039-DC-DF, 2021 WL 1100526, at *5 (W.D. Tex. Jan. 20, 2021), *rep. & rec. adopted in part, rejected in part on different grounds*, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *accord Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 818 (3d Cir. 2019) ("Because of the parallels between the ADA and FAAAA, ADA cases are instructive regarding the scope of FAAAA preemption."). And, because the Supreme Court found the ADA to permit "state-law-based court adjudication of routine breach-of-contract claims" absent "enlargement or enhancement based on state laws or policies external to the agreement," *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995), the same conclusion applies when analyzing contract-based claims in the FAAAA-preemption context, *see Wise*

*Recycling*, 943 F. Supp. 2d at 705; *Chatelaine*, 737 F. Supp. 2d at 643; *Huntington*, 2010 WL 1930087, at *3; *see also Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1052 (7th Cir. 2016) ("[B]reach-of-contract claims ... were not preempted [under the ADA] because they are 'privately ordered obligations' that 'simply hold parties to their agreements' and 'thus do not amount to a State's enactment or enforcement of any law' ...." (cleaned up) (quoting *Wolens*, 513 U.S. at 228-29)).

The law concerning FAAAA preemption of tort claims is not so clear. The Fifth Circuit has not yet addressed the issue, and there is a split-of-authority in the decisions of district courts, including those in Texas. *See Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2021); *Gerred v. FedEx Ground Packaging System, Inc.*, No. 4:21-cv-1026-P, 2021 WL 4398033, at *2-*3 (N.D. Tex. Sept. 23, 2021).

The Supreme Court has instructed that, when Congress has statutorily preempted state laws, "our task is to identify the domain expressly preempted." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (internal quotation omitted)). To accomplish this, courts must "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* (internal quotation omitted).

The key question here is whether section 14501(c)(1)'s text – preempting state laws that "relate to" a broker's "services" "with respect to transportation" – encompasses Adame's common law fraud claim. While the Supreme Court has determined that the words "related to" evince a broad preemptive scope and

encompass state laws "having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly," it has also warned that the FAAAA "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 260-61.

In determining whether a tort claim falls within the ambit of preemption provisions, courts frequently look to the facts underlying the claim or the specific nature of the tort claim alleged to determine whether it "relates to" "services." *See Cruz Miguel Aguina Morales v. Redco Transport Ltd.*, 2015 WL 9274068, at *1 (S.D. Tex. 2015) (collecting cases). Here, the factual allegations underlying the common law fraud claim are entirely based on Echo's alleged misrepresentation to SMG that the barrels were empty. Echo fails to show how this alleged misrepresentation converts Adame's common law fraud claim to one arising exclusively under federal law for jurisdictional purposes. And, although broker services entail the arrangement of transportation, *see* 49 U.S.C. § 13102(2), this alleged misrepresentation is too tenuous to affect those services.

Accordingly, the undersigned concludes that Echo has failed to meet its burden to show that Adame's state law claims were completely preempted by the FAAAA as necessary to establish federal question jurisdiction.

**Recommendations**

The Court should grant the Motion to Remand [Dkt. No. 5] and remand this action to the County Court at Law No. 4, Dallas County, Texas, from which it was removed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 12, 2012

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE